FILED
2020 Aug-13  AM 11:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LISA JONES,                                     )
                                                )
        Plaintiff,                              )
                                                )
v.                                              )   Case No. 4:19-cv-613-GMB
                                                )
ANDREW M. SAUL,[1] Commissioner,                )
Social Security Administration,                 )
                                                )
        Defendant.                              )

## MEMORANDUM OPINION

On December 5, 2014, Plaintiff Lisa Jones filed an application for a period of disability and disability insurance benefits ("DIB"). Her alleged disability onset date is May 28, 2015.[2] Jones' application for benefits was denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on January 19, 2017, and he denied Jones' claims on July 6, 2017. Jones requested a review of the ALJ's decision by the Appeals Council, which declined review on December 14, 2017. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Saul is substituted for Nancy Berryhill as the proper defendant in this case.

[2] Jones' initial alleged onset date was September 30, 2014, but she amended it to May 28, 2015 during the hearing and by letter. R. 51–52 & 154.

Administration (the "Commissioner") as of December 14, 2017.[3]

Jones' case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 11. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[4]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the

---

[3] The Appeals Council granted Plaintiff's request for an extension of time to file a civil action. R. 2.

[4] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)).  The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning

to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff bears the burden of proving that she is disabled, and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the

4

specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?

(4) Is the claimant unable to perform her former occupation?

(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Jones was 52 years old at the alleged onset of disability and 54 years old at the time of the ALJ's decision. R. 30, 505 & 669. Her primary complaints are difficulties with standing and sitting, as well as panic attacks when she is in public. R. 55. She testified that she has fibromyalgia nerve pain and arthritis in her back, hips, knees, and feet. R. 55. In her disability report, Jones alleged that fibromyalgia, osteoarthritis, depression, anxiety, chronic laryngitis, carpel tunnel, severe dry eye syndrome, allergies, and restless leg syndrome prevent her from working. R. 68 &

189.

Jones completed at least four years of college, but the record does not reflect whether she received a college diploma. R. 190.  In the past, she held a variety of employment positions.  She was a bank teller from February 1992 until March 2004 except for a short break in employment during the summer of 2001. R. 191.  From April 2004 until April 2007, Jones was a cash room clerk at a Pepsi plant. R. 191.  Her last employment was as a receptionist at a dermatology office from April 2007 until September 2014. R. 191.

Jones submitted a number of medical records to the ALJ to support her claim of disability, including a medical health source statement from her treating psychiatrist, Dr. James Barnett. R. 446.  The statement consists of the following questions, in response to which Dr. Barnett circled "yes" or "no":

- Can Ms. Jones understand, remember or carry out very short and simple instructions?
- Can Ms. Jones maintain attention, concentration and/or pace for periods of at least two hours?
- Can Ms. Jones perform activities within a schedule and be punctual within customary tolerances?
- Can Ms. Jones maintain an ordinary routine without special supervision?
- Can Ms. Jones adjust to routine and infrequent work changes?
- Can Ms. Jones interact with supervisors?
- Can Ms. Jones interact with co-workers?
- Can Ms. Jones maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness?

R. 446.  Dr. Barnett circled "no" for every question except the first and the last.

R. 446.  Dr. Barnett also stated that Ms. Jones would be expected to miss 15 days of work during any 30-day period due to her psychological symptoms. R. 446.  He listed the side effects of her medication as "sedation." R. 446.  The ALJ assigned little weight to this opinion because the treatment notes did not document this level of severity.

> In fact, the claimant's mental status examinations were essentially normal during this period and there is no evidence of the claimant reporting any significant symptoms or limitations due to her mental health impairments.  Dr. Barnett's opinions are not consistent with his own treatment notes pertaining to the claimant and there is no evidence that Dr. Barnett even examined or evaluated the claimant during the proceeding five-month period prior to completing the form.  For these reasons, his opinions are given little weight.  Although Dr. Barnett's opinions on this form are giving little weight, his general findings within his medical records are, however, given great weight.

 R. 35 (citations omitted).

Jones also underwent a consultative examination with Jack L. Bentley, Jr., Ph.D. on February 12, 2015. R. 439–42.  After documenting her personal history, Dr. Bentley reported that Jones had an unremarkable appearance with appropriate grooming and fair eye contact. R. 440.  She was alert and oriented, showed no limitations in expressive or receptive communication skills, and her memories were intact. R. 440.  He described her mood as mildly dysphoric and her affect restricted, noting evidence of anxiety and some restlessness during the interview. R. 440. Plaintiff reported that she attended church, exercised at least three times per week at a local athletic club, and enjoyed baking, crafts, and reading. R. 441.  She had several

friends at church and lived with her mother, with whom she had a good relationship. R. 440–41. Dr. Bentley observed that Jones' "psychiatric symptoms suggest Generalized Anxiety Disorder which has had a significant impact on her day-today behavior," but considered "[t]he prognosis for her current level of functioning . . . favorable." R. 441. He opined that Jones would have a moderate restriction in her ability to sustain complex or repetitive work-related activities and a mild restriction on simple tests based on her history of chronic anxiety and panic attacks. R. 441.

The ALJ assigned "lesser weight" to Dr. Bentley's opinions. R. 35. The ALJ agreed that Jones' "mild symptoms from anxiety and depression could adversely affect her ability to sustain complex tasks," but found that "there is no evidence within the record to support Dr. Bentley's assessment that the claimant would have moderate restriction in her ability to perform repetitive work-related tasks." R. 35.

During the hearing, the ALJ posed the following hypothetical to a vocational expert ("VE"):

> Let me ask you now to consider a hypothetical individual that I will identify as hypothetical #1. This . . . individual is a younger individual with at least a high school education who has work experience in the bank teller, the cash clerk, and the receptionist jobs that you've identified from the work history of Ms. Jones. And this individual can perform a range of light exertion as that term is defined in the administrative regulations.[5]   However, as part of the job requirement,

_____

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of

this individual would not climb ladders, ropes or scaffolds. Would not perform around work hazards. Would not perform in concentrated exposure to extreme cold temperature or vibration. And additionally, the individual would be limited to no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching or crawling. The individual can maintain attention, concentration, persistence and pace for periods of at least two hours. And with a normal rest break process[6] be able to can complete an 8/40 eight-day, 40-hour week with the breaks. Given that combination of limitations would this hypothetical individual be able to perform any of the three jobs that you mentioned initially from the work history of Ms. Jones?

R. 60–61. The VE responded that this hypothetical individual could perform Jones' past work, but only to the extent the job as a cash clerk was performed as it is generally performed and not as Jones performed it. R. 61. The ALJ then asked whether there were any other jobs that are light and unskilled that this hypothetical individual also could perform. R. 62. The VE answered in the affirmative and offered jobs such as cashier II, garment sorter, and information clerk. R. 62.

After addressing a second hypothetical, counsel for Jones questioned the VE and specifically addressed the limitations contained in Dr. Barnett's mental health source opinion. R 64–65. The VE testified that those limitations would eliminate substantial gainful employment. R. 65.

The ALJ issued his decision on July 6, 2017. R. 38. Under step one of the

---

performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[6] The VE described the "normal rest break process" as one 15-minute break in the morning, one 30-minute lunch break, and one 15-minute break in the afternoon. R. 64.

five-step evaluation process, the ALJ found that Jones has not engaged in substantial

gainful activity since May 28, 2015. R. 26.  The ALJ concluded that Jones suffers

from the severe impairments of fibromyalgia and osteoarthritis. R. 26–28.  The ALJ

noted that these medically determinable impairments cause more than minimal

limitations to the ability to perform basis work activities. R. 26.  But the ALJ

concluded at step three of the analysis that none of Jones' impairments satisfied or

medically equaled the severity of one of those listed in the applicable regulations.

R. 28–31.

Before proceeding to the fourth step, the ALJ determined that Jones had the

residual functional capacity ("RFC") to perform a limited range of light work. R. 31.

More specifically, the ALJ found that Jones had the following limitations with

respect to light work, as defined in 20 C.F.R. § 404.1567(b):

> The claimant would not climb ladders, ropes or scaffolds.  The claimant
> would not perform around work hazards and she would not perform in
> concentrated exposure to extreme cold temperature or vibration.
> Additionally, the claimant would be limited to no more than occasional
> climbing of ramps or stairs, balancing, stooping, kneeling, crouching or
> crawling.  The claimant would be able to maintain concentration,
> persistence and pace for periods of at least two hours, and with normal
> breaks, can compete an eight-hour day and forty-hour week.

R. 31.  At the fourth step, the ALJ determined that considering Jones' age, education,

work experience, and RFC, she was capable of performing her past relevant work as

a bank teller and receptionist. R. 36.  With this determination, the inquiry ended

because a claimant who is capable of performing past work is not disabled. 20 C.F.R.

§§ 416.920(a)(4)(v) & (g)(1).

The ALJ performed the step-five analysis, however, as an alternative finding. R 36.  The ALJ determined that considering Jones' age, education, work experience, and RFC, there are jobs that she can perform that exist in significant numbers in the national economy. R. 36–37.  Therefore, the ALJ concluded that Jones was not disabled within the meaning of the Social Security Act from May 28, 2015 through the date of the decision. R. 37–38.  Based on these findings, the ALJ denied Jones' application. R. 38.

## IV.  DISCUSSION

Jones makes four arguments in favor of remand: (1) the ALJ failed to give proper weight to the treating psychiatrist, Dr. Barnett; (2) the ALJ failed to give proper weight to the consultative psychologist, Dr. Bentley; (3) the ALJ's reliance on the vocational expert's testimony was in error because it was not based on a correct or full statement of Jones' limitations and impairments; and (4) the ALJ failed to conduct a proper analysis of Jones' fibromyalgia under Social Security Ruling ("SSR") 12-2p. Doc. 14 at 19–35.  The court addresses each argument in turn.  For the following reasons, the court finds that substantial evidence supports the ALJ's determination and that the ALJ applied the proper standards to reach this conclusion.

A.    **Treating Psychiatrist's Opinion**

Jones first argues that the ALJ failed to accord proper weight to the opinions of her treating psychiatrist, Dr. Barnett, and also failed to state good cause for discounting his opinion.[7] Doc. 14 at 19–25.  Jones contends that his opinions[8] are supported by medical records from Mountain View Hospital. Doc. 14 at 20.

"In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, [and] whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)).  A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."

---

[7] Jones also references caselaw relating to the ALJ's duty to specify the weight given to a treating physician's opinion. Doc. 14 at 23–24.  To the extent these citations insinuate that the ALJ did not articulate the reasons for giving less weight to the opinion of Dr. Barnett, this argument is belied by the record.  The ALJ stated that he gave little weight to the opinion of Dr. Barnett and articulated his reasons for discounting that opinion. R. 35.

[8] Jones also cites to the mental health source statement submitted to the Appeals Council. Doc. 14 at 20 (citing R. 44).  The Appeals Council "did not consider and exhibit this evidence" because it found that the "evidence does not show a reasonable probability that it would change the outcome of the decision." R. 8.  Jones does not challenge this finding.

*Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004).   The ALJ must clearly articulate his or her reasons for rejecting a treating physician's opinion. *Id*. at 1240–41.

Here, the ALJ has shown good cause for assigning little weight to the medical source statement completed by Dr. Barnett.   The court first notes that the opinion is merely a series of questions in response to which Dr. Barnett circled responses or filled in blank spaces with no explanation for his answers. R. 446.   Without explanation or extrapolation from Dr. Barnett, the form has little probative value. Indeed, several courts have criticized "form reports"—such as the one from Dr. Barnett—where a physician merely checks off a list of symptoms without providing an explanation of the evidence that supports the decision. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best[.]"); *Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012) (finding that the "form report completed by Dr. Morgan and submitted by [plaintiff]'s counsel consisted of a series of conclusory 'check-offs' devoid of any objective medical findings"); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative value because they are conclusory

and provide little narrative or insight into the reasons behind the conclusions"). The court acknowledges, however, that the use of such forms "is not a basis, in and of itself, [to] discount them as conclusory." *Schink v. Comm'r of Soc. Sec*., 935 F.3d 1245, 1262 (11th Cir. 2019) (emphasis added).

As the ALJ explained, Dr. Barnett's limited treatment notes do not provide support for the substantial limitations detailed in the mental health source statement. Jones received treatment from Dr. Barnett for anxiety and depression beginning in December 2003, but the medical records reflect only sporadic treatment until July 2014. R. 526.  The vast majority of the treatment records contain little to no information other than notations of "counseling" and medical management related to Jones' symptoms. R. 524–26.  There are a few records documenting what appears to be an annual visit with Dr. Barnett in 2007 and 2008 (R. 521–22), two visits in 2009 (R. 519–20), two visits in 2010 (R. 517–18), four visits in 2011 (R. 513–16), and two visits in 2012. R. 511–12.  In these treatment notes, Dr. Barnett consistently indicated unremarkable findings on mental status examinations, including orientation to person, place, and time, normal sleep patterns, good insight and judgment, logical though processes, though content within normal limits, good appetite and energy, and intact memory. R. 390–93 & 507–11.  The records show a break in treatment in 2013, but that Jones resumed her mental health treatment in July 2014 and saw Dr. Barnett more consistently after that time. R. 390–95.  The

2014 treatment notes reflect progress after just one month of treatment and show that her mental health examinations between July 2014 and December 2014 were normal. R. 390–95.

Jones' unremarkable mental status examinations provide substantial evidence to support the ALJ's finding that Jones had no limitations based on mental impairments. *See* 20 C.F.R. §§ 404.1520a; 404.1522; *Womble v. Comm'r of Soc. Sec.*, 705 F. App'x 923, 927 (11th Cir. 2017) (concluding that the ALJ's decision to discredit the opinion of the claimant's treating doctor was supported by substantial evidence where the opinion was not supported by the doctor's own treating notes, given the claimant's conservative and infrequent treatment history); *Reynolds v. Comm'r of Soc. Sec.*, 457 F. App'x 850, 852 (11th Cir. 2012) (holding that the ALJ properly addressed the claimant's allegations of depression and found no severe impairment where the medical records documented minimal findings and a favorable prognosis for depression).  Additionally, the gap in time between Dr. Barnett's last visit with Jones in December 2014, when her mental status examination findings were normal, and the May 28, 2015 mental source statement, without any treatment in between or explanation from Dr. Barnett, provides further basis to discount the opinion. *See Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006) (recognizing that a gap in treatment supported the ALJ's decision to discount a treating source opinion).  Accordingly, substantial evidence supports the ALJ's

decision to give little weight to the opinions contained in Dr. Barnett's mental health source statement.

## B.      Consulting Physician's Opinion

Jones next contends that the ALJ failed to accord proper weight to the opinion of Dr. Bentley, the consulting psychologist. Doc. 14 at 25–28.  "The opinions of non-examining, non-reviewing physicians are entitled to little weight when  contrary to those of an examining physician, and taken alone, they do not constitute substantial evidence." *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 901 (11th Cir. 2012).  A doctor's opinion may be discounted based on the length and frequency of the treatment relationship and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c)(2). A physician who saw the claimant on a single occasion is not considered a treating physician, and his opinion is not entitled to great weight. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

The Commissioner argues that Jones abandoned her claim with respect to Dr. Bentley's opinion. Doc. 15 at 9–10.  The court agrees.  "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co*., 385 F.3d 1324, 1330 (11th Cir. 2004).  "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Atty. Gen*., 561 F.3d 1275,

1278 (11th Cir. 2009) (quotation marks omitted).  A recent panel of the Eleventh Circuit, in an unpublished opinion, applied *Singh* to a brief in another case, finding that the plaintiff abandoned an issue on appeal "because her initial brief simply mentions the issue without providing any supporting argument."[9] *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing *Singh*, 561 F.3d at 1278–79); *see also Bailey v. Soc. Sec. Admin., Comm'r*, 2019 WL 5787955, at *1 n.1 (11th Cir. Nov. 6, 2019) (declining to address one of the plaintiff's arguments because she raised it "'in a perfunctory manner without supporting arguments'") (quoting *Sapuppo v. Allstate Floridian Ins. Co*., 739 F.3d 678, 680–82 (11th Cir. 2014)); *Morgan v. Soc. Sec. Admin., Comm'r*, 2019 WL 1466259 (N.D. Ala. Apr. 3, 2019) (finding plaintiff abandoned her argument that the ALJ improperly considered her fibromyalgia where she identified no specific error with the ALJ's consideration of her fibromyalgia and did not explain why she believed the ALJ's evaluation of her fibromyalgia ran afoul of SSR 12-2p).

In the section of her brief dedicated to this contention, Jones provides no argument or citation to the record. Doc. 14 at 25–28.  She does not even identify the relevant portions of the medical opinion at issue.  Instead, the three and a half pages dedicated to this section of her brief consist of general principles of law governing

---

[9] That finding did not form the sole basis for the panel's decision as it also found that the plaintiff's argument failed on the merits. *Sorter*, 773 F. App'x at 1073.

an ALJ's treatment of medical experts and block quotes from other cases dealing with the issue, but she stopped short of explaining how the ALJ erred in considering Dr. Bentley's opinion. Doc. 14 at 25–28.  The brief does not provide any substantive analysis on this issue.   This sort of perfunctory argument gives neither the Commissioner nor the court any guidance on Jones' argument aside from the fact that she asserts error. *See Singh*, 561 F.3d at 1278 ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").  Jones' attempt to cure this deficiency in her reply brief (Doc. 16 at 6–8) by block quoting the relevant portions of the record is of little consequence.  She still fails to provide any substantive argument or analysis. For these reasons, the court finds that Jones has abandoned this issue. *See Singh*, 561 F.3d at 1278; *Sapuppo*, 739 F.3d at 681.

Even if the court were to attempt to guess at Jones' argument, substantial evidence supported the decision to assign little weight to the opinion of Dr. Bentley. Because Dr. Bentley was a consultative examiner and only saw Jones on one occasion, his opinion is not entitled to any deference or special consideration. *See Crawford*, 363 F.3d at 1160; *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.

1987).  The ALJ gave the opinion of Dr. Bentley "lesser weight" because there was no evidence in the record to support his conclusions about her ability to perform repetitive work-related tasks. R. 35.

Although Dr. Bentley noted that Jones' "psychiatric symptoms suggest a Generalized anxiety Disorder which has had a significant impact on her day-to-day activities," there is nothing in his opinion explaining how that disorder would restrict her ability to perform work-related tasks. R. 439–42.  In fact, there is no explanation as to the reasoning behind the limitation. R. 439–42.  Additionally,  as explained above, the medical records from her treating physician, Dr. Barnett, did not indicate limitations in the area of mental health functioning. R. 390–95 & 507–11.  Jones' reported daily activities further undermine Dr. Bentley's opinion.  She regularly attends church and exercises at the gym, drives, shops, reads, bakes, plays video games, and works on crafts, all of which suggest an ability to sustain more complex activities. *Chambers v. Comm'r of Soc. Sec*., 662 F. App'x 869, 871–72 (11th Cir. 2016) (noting that the ALJ need not to assign the consultative psychologist's opinion considerable weight, where, among other things, it was contradicted by the claimant's own testimony regarding his daily activities).

For the reasons discussed above, the court first finds that Jones abandoned her argument as it relates to Dr. Bentley's opinion.  In the alternative, the court finds that the ALJ did not err in according lesser weight to the opinion of Dr. Bentley.

The ALJ clearly articulated his reasons for doing so and substantial evidence supports his finding that the record did not support Dr. Bentley's opinion.

## C.     Vocational Expert's Testimony

Jones' third argument is that the VE's testimony is not supported by substantial evidence because it was based on an inaccurate and incomplete hypothetical. Doc. 14 at 28–30.  Specifically, Jones contends that "the hypothetical question relied upon did not accurately state claimant's pain level[10] or her residual functional capacity," but instead assumed she could perform light work. Doc. 14 at 28.  The court disagrees.

"[F]or a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d 1253, 1270 (11th Cir. 2007).  Further, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford*, 363 F.3d at 1161.

_____

[10] Jones does not provide any argument regarding her pain or the ALJ's analysis of her subjective complaints of pain.  The court will not concoct an argument for her.  The ALJ properly considered Jones' subjective complaints in formulating her RFC and substantial evidence supports the ALJ's finding.

Here, the ALJ found that the evidence demonstrated that Jones could perform her past relevant work as a bank teller and receptionist. R. 36.  He also found that she can work in additional jobs that exist in significant numbers in the national economy, such as a cashier II, garment sorter, or information clerk. R. 37.  The ALJ's hypothetical questions to the VE fully accounted for Jones' impairments and limitations, as demonstrated by the medical evidence of record.  This is all that is required of the ALJ. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *McSwain*, 814 F.2d at 619–20 (11th Cir. 1987); *see also Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 883 (11th Cir. 2019) (holding that "because Borges's RFC, which is supported by substantial evidence . . . matched the ALJ's first hypothetical question at the hearing he did not need to rely on these more restrictive hypotheticals").

Jones has failed to establish that she had additional limitations beyond those incorporated into the RFC determination.  She points to the limitations opined by Dr. Barnett in his mental health source statement (Doc. 14 at 30), but those limitations are not supported by the record, as discussed above.  Because Jones' RFC matched the ALJ's first hypothetical question at the hearing, the ALJ did not need to rely on more restrictive hypotheticals later posed to the VE.  Jones' argument is without merit.

**D.     Analysis of Fibromyalgia**

Jones' final argument is that the ALJ improperly analyzed her fibromyalgia under SSR 12-2p. Doc. 14 at 31–35.  The Commissioner again contends that Jones abandoned her argument because she failed to "elaborat[e], discuss[] the evidence, or even cit[e] the record." Doc. 15 at 17.  The court agrees.  Much like her argument challenging Dr. Bentley's opinion, Jones provides no argument whatsoever as to how the ALJ's treatment of her fibromyalgia fell short of the relevant regulations. Instead, she simply states that "[t]he ALJ acknowledged a diagnosis of fibromyalgia"; concludes, without any discussion, that the ALJ's analysis was improper; and excerpts cases where an ALJ improperly evaluated a claimant's fibromyalgia. Doc. 14 at 31–35.  And, again, her reply brief does not cure these concerns.  It simply repeats the same discussion while omitting certain of the block quotations. Doc. 16 at 10–11.  For these reasons, the court finds that Jones has abandoned her claim objecting to the ALJ's analysis of her fibromyalgia. *See Singh*, 561 F.3d at 1278; *Sapuppo*, 739 F.3d at 681.

Even if the court considers the merits of this contention, it fails.   To establish a medically determinable impairment of fibromyalgia under SSR 12-2p, a claimant must show that she has a diagnosis of fibromyalgia from a licensed physician, provide evidence that she meets the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary

Diagnostic Criteria, and establish that the physician's diagnosis is not inconsistent with the other evidence in the case record. *See* SSR 12-2p, 2012 WL 3104869, at \*2–3. The ALJ specifically referenced these guidelines when reviewing Jones' fibromyalgia symptoms and found that fibromyalgia was a severe impairment. R. 29–30. The ALJ then explicitly considered the SSR12-2p criteria in reviewing Jones' fibromyalgia symptoms and her subjective complaints in making the RFC determination. R. 31–36. In formulating Jones' RFC, the ALJ considered the longitudinal treatment records, including her diagnosis and treatment from Dr. Gene Watterson and Dr. Joel Abbott. R. 26, 30, 32–33 & 36. Jones does not identify any deficiency in the ALJ's consideration of the fibromyalgia evidence, and the court cannot find any cause for concern. Substantial evidence supports Jones' RFC as it relates to her fibromyalgia and the ALJ's finding that Jones was able to perform her past relevant work despite her limitations.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. Accordingly, the decision of the Commissioner is due be affirmed. A final judgment will be entered separately.

DONE and ORDERED on August 13, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE